Case 1:23-cv-00034   Document 51   Filed on 10/02/24 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
October 02, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NAYELLY CASTRO MENDOZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:23-CV-034 |
| | § | |
| ANTONY BLINKEN, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

Plaintiff Nayelly Castro Mendoza filed this action under 8 U.S.C. § 1503, seeking a declaratory judgment that she is a United States citizen. In September 2024, the Court held a bench trial. Based on the record and the applicable law, the Court concludes that Plaintiff has not demonstrated by a preponderance of the evidence that she was born in the United States.

**I.  Findings of Fact**

At trial, the Court heard testimony from the Plaintiff and her mother, Teresa Castro Mendoza. The Court bases its decision on these witnesses' testimony, the admitted exhibits, and the parties' stipulated facts.

The central issue in this matter concerns whether Teresa Mendoza gave birth to Plaintiff in the United States–specifically, in Port Isabel, Texas. The Court reserves the resolution of this issue for the following section. For now, the Court presents background facts, on most of which the parties agree. To the extent that the parties presented controverting evidence as to these facts, the Court resolves the dispute as indicated here.

Teresa Mendoza was born in San Luis Potosi, Mexico, in 1956. She moved to Matamoros for elementary and middle school, living with her aunt. She later attended a Mexican university in Ciudad Victoria and obtained a degree in nursing before moving back to Matamoros in 1976.

Teresa started her nursing career at a government hospital, working there for forty years until her retirement. During the relevant period, she also worked a second nursing job at the *Instituto de Seguridad y Servicios Sociales de los Trabajadores del Estado* (ISSSTE). Throughout these years, Teresa never married and lived by herself in Matamoros.

While working at the hospital, Teresa met Reynaldo Gutierrez Luna. They dated for about six months before Teresa became pregnant with their child (Plaintiff). They never married, and Gutierrez was not involved in the raising of the Plaintiff.

Teresa did not tell her family about the pregnancy because she felt ashamed that she had become pregnant out of wedlock. She received prenatal check-ups from residents at the hospital she worked at and met once with a gynecologist there. During this period, Teresa held a visa to cross the border into the United States.

In January 1989, Teresa gave birth to Plaintiff. At some point, Teresa obtained a Certificate of Live Birth for Plaintiff from the hospital she worked at in Matamoros. The document, which the parties did not present as an exhibit, contained a doctor's signature and apparently reflected the birth date as January 9, 1989.

On January 25, Isidora King, a midwife who practiced in south Texas, registered Plaintiff's birth with the state of Texas, recording her date of birth as January 21, 1989, and her place of birth as Port Isabel, Texas. On the Texas birth certificate, Plaintiff's name is spelled "Nayelly Castro Mendoza". (*See* Texas Birth Certificate (PX1), Doc. 48)  At some later point, Teresa obtained the original of the Texas birth certificate.

On February 27, Teresa registered Plaintiff's birth with the Mexican Civil Registry, receiving a Mexican birth certificate that reflected Plaintiff's place of birth as Matamoros, Tamaulipas. On the Mexican birth certificate, Plaintiff's name is spelled as "Nallely Castro Mendoza", and her birth date is recorded as January 9, 1989. (*See Acta de Nacimiento* (PX2), Doc. 48–1)

2 / 8

Plaintiff grew up in Mexico and attended school there. She recalls celebrating her birthday on January 9. During her childhood, Plaintiff and her mother crossed into the United States, including for Plaintiff to receive vaccines and to shop. Those trips ceased when United States authorities rejected Teresa's visa renewal.

## II. Conclusions of Law

Plaintiff brings this declaratory judgment action under 8 U.S.C. § 1503(a), which provides a mechanism for an individual within the United States to challenge the denial of a right or privilege based on the determination of her citizenship.

### A. Applicable Standards

Under Section 1503(a), "[t]he Court must make a *de novo* determination of whether a plaintiff is a United States citizen." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012), *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014). "There are two sources of citizenship, and two only: birth and naturalization." *Thomas v. Lynch*, 796 F.3d 535, 538 (5th Cir. 2015) (quoting *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006)). In the current matter, Plaintiff claims she acquired citizenship at the time of her birth by virtue of being born in the United States.

In a Section 1503(a) case, the district court holds a bench trial and weighs the evidence, determines the credibility of witnesses, and resolves conflicting testimony. FED. R. CIV. P. 52(a)(1), (6); *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984). A plaintiff must prove her claim to citizenship by a preponderance of the evidence. *Escalante v. Clinton*, 386 F. App'x 493, 496 (5th Cir. 2010) (citing *De Vargas v. Brownell*, 251 F.2d 869, 870 (5th Cir. 1958)). "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993)

(cleaned up). In essence, if the evidence demonstrates only that it is equally likely that the plaintiff was born in a foreign country as in the United States, the plaintiff has not carried her burden.

"A contemporaneously filed foreign birth record creates a presumption of alienage", although that presumption can be rebutted. *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014), *aff'd*, 648 F. App'x 386 (5th Cir. 2015). Courts generally afford delayed birth certificates less evidentiary weight compared to more contemporaneously issued birth certificates. *See, e.g.*, *De La Cruz Vargas v. Blinken*, 569 F. Supp. 3d 556 (S.D. Tex. 2021), *appeal dismissed sub nom. Vargas v. Blinken*, No. 22-40007, 2022 WL 2448086 (5th Cir. Feb. 28, 2022) (affording less evidentiary weight to a 1974 delayed Texas birth certificate than to a 1968 Mexican birth certificate); *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275 (S.D. Tex. June 27, 2014), *aff'd*, 648 Fed. Appx. 386 (5th Cir. 2015) (giving less evidentiary weight to a 1988 delayed Texas birth certificate than to a 1987 Mexican birth certificate); *Pena-Sanchez v. Clinton*, No. 11-cv-00125, Order, ECF No. 34 (S.D. Tex. Mar. 28, 2013) (viewing a 1971 Mexican birth certificate as holding greater evidentiary weight than a 1974 delayed Texas birth certificate).

Baptismal certificates, medical records, and school records constitute evidence of an individual's birthplace, but courts consider such documents as "secondary evidence". *See, e.g.*, *De La Cruz v. Clinton*, No. A-11-CV-675-AWA, 2012 WL 1941373, at *2 (W.D. Tex. May 29, 2012) (citing 22 C.F.R. § 51.42(b)).

As for testimony, courts weigh the credibility of witnesses, but receive a plaintiff's self-serving statements and those of interested witnesses "with a grain of salt." *De Vargas*, 251 F.2d at 871; *see also Garcia*, 915 F. Supp. 2d at 835; *Patel v. Rice*, 403 F. Supp. 2d 560, 565 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. 2007).

### B. Application

Applying the applicable standard and legal principles to the evidence admitted at trial, the Court concludes that Plaintiff has not established by a preponderance of the evidence that she was

born in the United States.  The Court first presents Plaintiff's factual theory indicating that she was born in the United States, and then assesses that theory's credibility.

### 1. Plaintiff's Version of Her Birth

Teresa testified that when pregnant, she desired to have Plaintiff born in the Unites States so that she (Plaintiff) could have greater opportunities in life.  An acquaintance placed Teresa in contact with midwife Isidora King, and Teresa visited King in Texas six to eight times.  She drove herself to these visits.  She opted to use the services of a midwife despite being able to receive free services at the hospital she worked at in Matamoros.

On January 21, 1989, Teresa drove herself to Brownsville, Texas, to purchase baby supplies.  About mid-afternoon, she began feeling labor pains.  When her water broke, she asked a friend in Brownsville to go with her to the midwife's office.  The friend agreed, but drove separately and did not stay once they arrived.  Teresa recalls the office being located in or on the way to Port Isabel, Texas.

At the midwife's office, Teresa's labor continued, with only herself and the midwife present.  Around 4:30 p.m., she gave birth to Plaintiff.  She spent the night there and then returned to Matamoros the next day.

On January 25, King registered Plaintiff's birth with the Texas authorities.  A few days later, one of Teresa's friends brought the Texas birth certificate to her in Mexico.

Teresa paid the midwife $1,000 for her services.

As for the Mexican birth certificate, Teresa testified that she obtained it to facilitate Plaintiff's enrollment in a Mexican school and to obtain medical services for her in Mexico.  During Plaintiff's childhood, Teresa told Plaintiff that she had been born in the United States.  To obtain the Mexican birth certificate, she used a Certificate of Live Birth that she secured from the hospital she worked at, having a doctor sign the blank form with a birth date of January 9, 1989.

## 2. Assessment of Plaintiff's Factual Theory

Teresa's testimony presented a plausible story regarding Plaintiff's birth. But considering the entire record, the Court concludes that Teresa did not prove by a preponderance of the evidence that it was more likely than not that she gave birth to Plaintiff in the United States. Several factors weigh against Teresa's version of Plaintiff's birth.

The documentary evidence undermines Plaintiff's factual theory. Teresa registered Plaintiff's birth with Mexican authorities, representing that Plaintiff had been born in Matamoros on January 9, 1989. (*See Acta de Nacimiento* (PX2), Doc. 48–1)  When she baptized Plaintiff in January 1991, she again recorded a birth in Mexico on January 9. (*See* Baptismal Certificate (DX8), Doc. 49–8)

The only document that supports Teresa's version of Plaintiff's birth is the Texas birth certificate, registered on January 25, 1989, and reflecting a birth date of January 21. While a contemporaneously-filed birth certificate typically carries significant evidentiary weight, other evidence can rebut this presumption.[1] Here, various factors undermine the weight of Plaintiff's Texas birth certificate. During Plaintiff's childhood, her family celebrated her birthday on January 9, consistent with the Mexican birth certificate and baptismal certificate, and inconsistent with the Texas birth certificate. Even after Plaintiff discovered her Texas birth certificate when she was nine or ten years old, she continued to rely upon her Mexican birth certificate and continued to represent that her birthday was January 9. She did so when registering for her Unique Population Registry Code (CURP (DX9), Doc. 49–9), when she married in 2005 (*See* Marriage Certificate (DX2), Doc. 49–2), to obtain her Mexican Voter's Card (DX11, Doc. 49–10), and in connection with obtaining birth certificates for her two children (*See* Birth Certificates (DX4 & DX5), Docs. 49–3 & 49–4 (both reflecting Plaintiff's nationality as

---

[1] In addition, this case presents competing birth certificates, each of which was obtained relatively close to Plaintiff's birth.

"Mexican")). This reliance by Plaintiff and her mother on the Mexican birth certificate casts doubt on the legitimacy of the Texas birth certificate.[2]

In addition, in 1995, Isidora King, the midwife who registered the Texas birth certificate, signed an affidavit declaring that document "false". (*See* King Affidavit (DX7), Doc. 49–7) The Court does not find King's statement conclusive, as she passed away many years ago and could not testify regarding the circumstances surrounding that document. But the affidavit and King's conviction for fraudulently filing other Texas birth certificates reduces the weight afforded the Texas birth certificate. (*See* Judgment (DX6), Doc. 49–6)

Finally, both Teresa's and Plaintiff's credibility suffered through impeachment based on their prior depositions. For example, Plaintiff testified that when young, she celebrated her birthday on January 9. At her deposition, however, she claimed to celebrate the event on January 21. On various occasions, both Teresa and Plaintiff testified in a manner inconsistent with their deposition testimony. These inconsistencies cast doubt on their overall credibility.

Considering the trial record as a whole, and based on the applicable law, the Court concludes that Plaintiff has not demonstrated by a preponderance of the evidence that she was born in the United States.

## III. Conclusion

Based on the Court's findings and conclusions within this Order and Opinion, it is:

**ORDERED** that Plaintiff Nayelly Castro Mendoza's request for a declaratory judgment is **DENIED**; and

---

[2] The United States at trial also highlighted that various documents spell Plaintiff's name differently. While the exhibits reflect inconsistent spellings, the Court affords no weight to this issue. During direct examination, Teresa testified that she chose the name because of its meaning in an indigenous dialect. She believed the correct spelling was with a "double L" and an "I" at the end–i.e., "Nalleli"–but she was not sure. The Texas birth certificate uses "Nayelly", while the Mexican birth certificate and other Mexican documents use "Nallely". On cross examination, Teresa initially testified that she spells her daughter's name as reflected in the Texas birth certificate–i.e., "Nayelly". But the United States impeached this testimony with Teresa's deposition, during which she physically wrote out her daughter's name as "Nalleli". In the end, the Court notes that the various spellings proved inconsistent across the documents, and that Teresa's best recollection was that the correct spelling was "Nalleli", which does not appear to exist on any document.

**ORDERED** that Plaintiff Nayelly Castro Mendoza's request for attorney's fees is **DENIED**.

The Court will separately issue a Final Declaratory Judgment in accordance with this Order and Opinion.

Signed on October 2, 2024.

_____
Fernando Rodriguez, Jr.
United States District Judge